UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPH W. CARPENTER,

     Plaintiff,

v.                          CASE No. 8:13-CV-626-T-35TGW

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

     Defendant.

_____

## REPORT AND RECOMMENDATION

The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, I recommend that the decision be affirmed.

## I.

The plaintiff, who was forty-one years old at the time his insured status expired and who has a high school education, has worked as a firefighter, an emergency medical technician, a pest control technician, a sales agent, and a cook (Tr. 67, 90, 187).  He filed a claim for Social Security

_____

[1]This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998.  See also Local Rule 6.01(c)(21).

disability benefits, alleging that he became disabled due to two herniated discs in his back (Tr. 177).   The claim was denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge.  The law judge found that, through the plaintiff's date last insured of December 31, 2009, the plaintiff had severe impairments of degenerative disc disease of the lumbar spine and generalized anxiety disorder (Tr. 25).   He concluded that, through the date last insured, the plaintiff (Tr. 30-31):

> had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with additional limitations.  The claimant would be precluded from climbing any ladders, ropes, or scaffolds and from doing any crawling.  However, the claimant was capable of performing other postural activities at least occasionally such as climbing stairs, balancing, kneeling, crouching, and stooping.  The claimant should not have any concentrated exposure to hazards such as dangerous machinery or unprotected heights.  The claimant could perform work on a regular basis with customary breaks (once in the morning, once in the afternoon, along with a longer lunch break).  The claimant was capable of performing at least simple, unskilled, routine, and repetitive tasks with one to three steps instructions.  The claimant had

no specific limitations with regard to social
interactions other than the reduction to simple,
unskilled activities. The claimant was capable of
making work-related decisions, which include
responding to changes in the unskilled work
setting.

The law judge determined that these restrictions prevented the plaintiff from

returning to his past relevant work (Tr. 37).  However, based upon the

testimony of a vocational expert, the law judge found that the plaintiff could

have performed jobs that existed in significant numbers in the national

economy, such as fast food worker, sales attendant, parking lot attendant,

security monitor, final assembler, and food and beverage order taker (Tr. 38-

39). Accordingly, the law judge found that the plaintiff was not disabled (Tr.

39). The Appeals Council let the decision of the law judge stand as the final

decision of the Commissioner.

II.

A. In order to be entitled to Social Security disability benefits,

a claimant must be unable "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which

... has lasted or can be expected to last for a continuous period of not less

Case 8:13-cv-00626-MSS-TGW   Document 24   Filed 06/06/14   Page 4 of 31 PageID 478

than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). In this case, the plaintiff must show that he became disabled before his insured status expired on December 31, 2009, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."

-4-

Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 404.1520.

The initial question is whether the plaintiff is engaged in substantial gainful activity because, if so, the plaintiff will be found not disabled. 20 C.F.R. 404.1520(b). If not, the next inquiry (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1521(a). If there is not a severe impairment, then a claimant is deemed to be not disabled. 20 C.F.R. 404.1520(c).

When an impairment is severe, the next inquiry is whether the impairment meets, or equals, a listing in Appendix 1 (step three). 20 C.F.R. 404.1520(d). If it does not, the claimant's residual functional capacity is assessed. 20 C.F.R. 404.1520(a)(4). Based upon that assessment, a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. 404.1520(g).

III.

The plaintiff attacks the law judge's decision on four grounds. The relevant evidence on those challenges is that which has a bearing on the plaintiff's condition between April 4, 2004, the alleged disability onset date, and December 31, 2009, the plaintiff's date last insured. Evidence that either pre-dates or post-dates the pertinent period is relevant only to the extent that it sheds light on the plaintiff's condition during the period at issue. The relevant evidence does not sustain the plaintiff's challenges to the law judge's decision.

A.  The plaintiff first argues that "[t]he ALJ's finding that no new evidence was submitted after the disability determination service reviewed this case to rebut the finding that the musculoskeletal listing was not met or equaled is not based on substantial evidence" (Doc. 14, p. 12).  This argument, as stated, is bewildering.   Seemingly, the only meaningful contention on this issue is that the law judge erred in concluding at step three that the plaintiff did not meet, or equal, listing 1.04 in the Listing of Impairments.  Nevertheless, the plaintiff contends first that the law judge's reliance on the opinion of Dr. Clarence Louis, a nonexamining reviewing

physician, was improper because Dr. Louis "overlooked" certain evidence in determining that the plaintiff's impairments did not meet or equal a listing (id.).

This argument is far off target if it seeks to show that the law judge's conclusion at step three regarding the listings is erroneous. The law judge reviewed the medical evidence at length (Tr. 25-28). He then concluded that, through the date last insured, the plaintiff "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments," including, in particular, listing 1.00 regarding the musculoskeletal system (Tr. 29). The law judge added that "Disability Determination Service (DDS) medical examiner [i.e., Dr. Louis] also concluded after reviewing the evidence that no listing was met or equaled (Exhibit 14F)" (id.). The plaintiff misperceives the import of this statement.

In the first place, the law judge was not saying that he based his listing determination on Dr. Louis's opinion, but simply that Dr. Louis "also" reached that conclusion. In other words, the law judge based his conclusion on the evidence, and not just on Dr. Louis's opinion.

Moreover, the plaintiff's criticism of Dr. Louis's comments in Exhibit 14F is beside the point in any challenge to the law judge's determination of a listing. Exhibit 14F, which was cited by the law judge, is Dr. Louis's evaluation of the plaintiff's residual functional capacity. As the law judge points out, the residual functional capacity determination comes after the assessment of the listings and before step four of the sequential analysis (Tr. 24). Consequently, Exhibit 14F does not address the listings. Further, there is no separate evaluation of the listings by Dr. Louis. Accordingly, Dr. Louis's conclusion regarding the listing was an implicit one. Thus, because Dr. Louis evaluated the plaintiff's residual functional capacity, that meant that he had concluded that the plaintiff did not meet, or equal, a listing. That is all the law judge would have discerned about Dr. Louis's view of the listings from Exhibit 14F. Dr. Louis's comments in that exhibit did not reflect his evaluation regarding the listings, but rather sought to explain his assessment of the plaintiff's residual functional capacity. Further, the law judge did not accept Dr. Louis's assessment of the plaintiff's residual functional capacity and gave it only "limited weight" (Tr. 35).

In short, the plaintiff's criticism of Dr. Louis's comments in Exhibit 14F has no bearing on the law judge's determination that the plaintiff did not meet, or equal, a listing.

The second aspect of this argument is the plaintiff's contention that his back impairment met, or equaled, listing 1.04 A. The fact that the plaintiff first asserted the baseless argument regarding Dr. Louis's comments is a tip-off that this contention is similarly meritless.

A condition listed in Appendix 1 is considered so severe that a plaintiff who meets, or equals, a listing is deemed disabled without regard to vocational considerations. 20 C.F.R. Part 404, Subpart P, Appendix 1; Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). The plaintiff bears the burden of showing that he meets, or equals, a listing. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). Moreover, "when a claimant contends that he has an impairment meeting the listed impairments entitling him to an adjudication of disability under regulation 404.1520(d), he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed

impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency." Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986).

As indicated, the plaintiff contends that his impairments meet or equal listing 1.04 A of Appendix 1. That listing states:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

The law judge specifically considered the listings related to the musculoskeletal system (Tr. 29). However, the law judge found that the plaintiff did not meet, or equal, those listings (id.). Listing 1.04 A, as indicated, requires, among other things, medical findings of "compromise of a nerve root ... or the spinal cord ... [w]ith ... [e]vidence of nerve root

-11-

compression characterized by neuro-anatomic distribution of pain..." There is no such specific medical finding in the record, and the plaintiff does not assert that there is (see Doc. 14, p. 14). Further, the plaintiff has not pointed to any medical evidence which describes how his impairment is equivalent to a "compromise of a nerve root ... or the spinal cord ... [w]ith ... [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain ...."

The closest the plaintiff comes is to assert a finding of "nerve root irritation" (Doc. 14, p. 14). In fact the medical record cited for that statement does not say "nerve root irritation." Rather, that record, which was a diagnostic impression of an MRI by a radiologist, stated most pertinently: "At L4-5 there is moderate central disc protrusion which does impinge upon the thecal sac centrally and indent it" (Tr. 233). There is no opinion by a doctor that the finding is the equivalent of a "compromise of a nerve root ... or the spinal cord ... [w]ith ... [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain."

The plaintiff therefore has failed to carry his burden to demonstrate that he meets, or equals, listing 1.04 A. There certainly is not evidence that compels a finding that he does. <u>Adefemi</u> v. <u>Ashcroft</u>, <u>supra</u>.

In addition, the Commissioner points out that to establish that a listing is proven the medical criteria must be met, or equaled, for a period of twelve continuous months (Doc. 20, p. 7). In particular, the regulations state that, in order to meet the musculoskeletal listing, abnormalities must be established over time "[b]ecause abnormal physical findings may be intermittent." 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.00 D. Although the plaintiff points to medical records purportedly documenting two herniated discs in his back, nerve-root irritation, positive straight-leg raising testing, decreased range of motion in the back, and sensory loss (Doc. 14, p. 14), none of those records (some of which are prior to the alleged onset date) demonstrates that the plaintiff's impairments satisfied the criteria of listing 1.04 A for a period of twelve continuous months.

B. In two more arguments, the plaintiff asserts that the law judge failed to assess properly the opinions of Dr. Taras Kochno, a physical

medicine and rehabilitation specialist, and Dr. Howard Goldman, a psychiatrist (id., pp. 15-21). These contentions lack merit.

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

1. On July 22, 2010, Dr. Goldman completed a Medical Source Assessment (Mental) form in which he marked the plaintiff in a number of respects (Tr. 339, 345). Thus, he checked that there was no limitation in the plaintiff's ability to interact appropriately with the general public, and the plaintiff was only mildly limited in his ability to understand and remember simple instructions, and respond appropriately to supervisors, coworkers, and usual work situations (id.). Dr. Goldman marked that the plaintiff had severe limitations in his ability to maintain regular attendance, complete a normal workday and workweek without interruptions from psychologically based

-14-

symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods (id.). With respect to other matters, including carrying out simple instructions and maintaining attention and concentration for more than 10 minutes, the plaintiff was indicated to have moderate or moderately severe limitations (id.). With a reference to the plaintiff's back injury, Dr. Goldman estimated that the plaintiff's condition existed with these limitations since at least June 2001 (id.).

Dr. Goldman's opinion consisted of nothing more than checkmarks on a one-page form. The form contained no explanation for the marks. Thus, the opinion was simply conclusory. That circumstance, by itself, was sufficient to permit the law judge to discount the opinion. Lewis v. Callahan, supra, 125 F.3d at 1440.

Nevertheless, the law judge considered the opinion and explained why he gave it reduced weight. Thus, after discussing Dr. Goldman's treatment records in detail (see Tr. 27-28, 29-30), the law judge stated that "the course of treatment offered by Dr. Howard Goldman did not reflect the consistency one would expect if the claimant had been markedly affected for example" (Tr. 34). He added that Dr. Goldman's medical source

statement "simply is not supported by his own records from July 2009 through October 2009, or other medical and other evidence" (id.). The law judge further explained (Tr. 35-36):

> The undersigned gives reduced weight to Dr. Goldman's opinion. Dr. Goldman determined that the claimant exhibited severity with regard to maintaining regular attendance, completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods since 2001 (Exhibits 18F and 20F). However, the record (including Dr. Goldman's notes) does not support Dr. Goldman's findings. The record has consistently portrayed no more than moderate difficulties with regard to the claimant's ability to maintain concentration, persistence, or pace from a mental standpoint, based on the later and limited treatment records and the consultative evaluation.

In addition, the law judge said (Tr. 37):

> Evidence of mental health care does not start until late July 2009, [which] the claimant says that his wife recommended because of depression. Dr. Goldman's notes are limited, showing treatment between July and October 2009 with Valium only, one or two a day. The claimant did not obtain Zoloft that was prescribed. Claimant's anxiety index was 27 initially, indicative of moderate symptoms, but did include about eight points that

were more attributable to physical complaints. Also, Dr. Goldman's notes in July 2009 and upon return in July 2010, the next available after October 2009, show that the claimant's appetite, energy, and libido are all fine notwithstanding the claimant's testimony to energy loss. There does not appear to be any reference to a memory problem either. The medical source statement ... is not supported by Dr. Goldman's records let alone the preponderant weight of all the medical evidence. In fact, the claimant testified that he used Valium mainly for sleep. By testimony, there are no other medical treatment or referrals.

The plaintiff contends that, contrary to the law judge's conclusion, Dr. Goldman's opinion is consistent with his treatment notes (Doc. 14, p. 18). In this regard, the plaintiff argues that Dr. Goldman's treatment notes "confirm the diagnoses of generalized anxiety disorder, chronic pain, left leg weakness, sleep apnea (which can impact memory, focus or concentration), memory problems and the fact that the EMG of the left leg assessed permanent nerve damage" (id.).

In order to prevail, however, the plaintiff must show that he had functional limitations from his conditions that were not included in the law judge's determination of the plaintiff's residual functional capacity. In this respect, "a diagnosis or a mere showing of 'a deviation from purely medical

-17-

standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005), quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).  In other words, it is the functional limitations that determine disability.  Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); McCruter v. Bowen, supra.

Attempting to find support for Dr. Goldman's opinion, the plaintiff points to the opinion of Dr. Richard L. Belsham, a consultative psychologist (Doc. 14, p. 18).  The plaintiff asserts that Dr. Belsham "opined that [the plaintiff's] reliability was an issue" (id.).  However, what Dr. Belsham actually said was "[r]eliability would appear to be an issue with regards to medical condition and [the plaintiff] appears able to seek and secure employment" (Tr. 281).

In all events, Dr. Belsham's opinion does not support the functional limitations assessed by Dr. Goldman. For example, Dr. Belsham stated that the plaintiff "appears capable of following simple as well as complex instructions.  He appears capable of maintaining attention and concentration and appears adaptable and able to learn" (id.).  Significantly,

Dr. Belsham did not offer a prognosis "as no mental health problems are reported" (id.).

The plaintiff also argues that Dr. Goldman's opinion is supported by the treatment notes of Dr. Thomas Paolino, Jr., a psychiatrist (Doc. 14, p. 18).[2]  In this connection, the plaintiff states that Dr. Paolino found the plaintiff "depressed, sad, and anxious"; he diagnosed the plaintiff with generalized anxiety disorder, depression, and insomnia; and he prescribed Valium and Lexapro (id.).  Significantly, however, Dr. Paolino provided no opinion setting forth any functional limitations from the plaintiff's mental condition.  See Moore v. Barnhart, supra; McCruter v. Bowen, supra.

In addition, the plaintiff contends that he "initially reported to Dr. Paolino of being tired, difficulty falling asleep, restlessness, violent behavior, anxiety, irritability, getting upset and minor things, and poor concentration" (Doc. 14, p. 18).  Importantly, the law judge found that the

---

[2]Pointing to Dr. Paolino's treatment notes from October 2007 through October 2008, the plaintiff criticizes the law judge's statement that "[e]vidence of mental health care does not start until late July 2009" (Doc. 14, p.18; see Tr. 37). This misstatement, however, does not constitute reversible error. Thus, the law judge expressly acknowledged and considered the records of Dr. Paolino (see Tr. 27, 29, 32).

plaintiff was not fully credible (Tr. 31), and the plaintiff has raised no challenge to that credibility determination.

Finally, Dr. Goldman's opinion is shown to be unreliable in light of his concluding statement that "[t]his patient's condition existed with the above limitations at least est[imated] since June 2001 (Back Injury)" (Tr. 339). There is no indication that Dr. Goldman saw the plaintiff prior to July 2009. Further, Dr. Goldman is a psychiatrist and was not treating the plaintiff's back condition. Consequently, he could not plausibly opine about the plaintiff's mental status in June 2001. Notably in a telephone contact with a Social Security Administration representative, the plaintiff on July 23, 2009, said that he does not have a mental impairment (Tr. 212).

In these circumstances, the law judge easily had good cause to discount Dr. Goldman's opinion.

2. Dr. Kochno treated the plaintiff for work-related, physical injuries. In May 2009, Dr. Kochno completed a Medical Source Statement, indicating that the plaintiff had two level lumbar disc herniations (Tr. 298). He opined that, in an 8-hour workday, the plaintiff could sit for 1 hour and stand or walk for 2 to 3 hours (Tr. 297). The plaintiff would need to rest

(lying down or reclining in a supine position in bed or an easy chair) for 4 to 5 hours per 8-hour workday (id.). The plaintiff could frequently lift up to 5 pounds and occasionally lift up to 10 pounds (Tr. 298). Dr. Kochno indicated that the plaintiff could occasionally balance ("depending on symptoms"), but rarely or never stoop (id.). He stated that these restrictions had existed since at least June 22, 2001 (id.).

On their face, these opinions are extreme. Particularly in light of the plaintiff's daily activities, which include care for his three-year-old son as a stay-at-home father, driving, grocery shopping, and light housekeeping (Tr. 29), the opinions, for example, that in an 8-hour workday the plaintiff can only sit for 1 hour and must rest lying down or reclining in a supine position in bed or in an easy chair for 4 to 5 hours, seem implausible.

The plaintiff asserts that "the ALJ ... failed to articulate good cause for his rejection of the opinion from Dr. Kochno, who had the longitudinal picture of Mr. Carpenter's impairments since he has treated him off and on since 2003" (Doc. 14, p. 19). This contention overstates Dr. Kochno's treatment of the plaintiff, since the treatment was mostly "off" since 2003, which incidentally was prior to the plaintiff's alleged disability on-set

date of April 4, 2004. The plaintiff was not treated by Dr. Kochno from August 14, 2003, until May 28, 2009 (Tr. 301).[3] While Dr. Kochno qualifies as a treating physician, although just barely, at the time he completed the Medical Source Statement he had not seen the plaintiff in almost six years.

Before evaluating Dr. Kochno's opinion, the law judge considered a consultative examination report by Dr. Fathy Saad from February 12, 2009 (Tr. 271-74). Concerning that report, the law judge said (Tr. 33):

> While examining the claimant's musculoskeletal system, Dr. Saad's report consisted of the following findings: full flexion, extension, lateral flexion bilaterally and full rotary movement bilaterally in the cervical spine and lumbar spine; full range of motion of the hips, knees, and ankles bilaterally; and a five out of five strength level in the upper and lower extremities. Additionally, Dr. Saad noted that the claimant appeared in no acute distress, walked on heels and toes without difficulty, normal squatting ability, normal stance, and no difficulty getting on or off the examining table. Dr. Saad diagnosed the claimant with chronic low back pain with a history of protrusion

---

[3]A number of dates cited by the plaintiff as treatment by Dr. Kochno were physical therapy sessions rendered by a therapist without any indication that the plaintiff was seen by Dr. Kochno (see Doc. 14, p. 4). The only examination notes in the record by Dr. Kochno appear to be from August 14, 2003 (Tr. 241-42), and May 28, 2009 (Tr. 302-03).

discs at L4-S1, along with status post left inguinal
hernia repair.  Dr. Saad opined that the claimant
had no physical limitations based on his findings
(Exhibit 9F).

Then, with respect to Dr. Kochno, the law judge stated (id.):

Although Dr. Saad's opinion revealed normal
findings, Dr. Taras Kochno's opinion did not
correlate with the medical treatment notes
concerning the claimant's back disorder
limitations.  In May 2009, Taras Kochno, M.D., a
physical medicine and rehabilitation specialist,
provided treatment to the claimant for his previous
work-related injuries.  The claimant much earlier
had undergone physical therapy treatment, steroid
injections, chiropractic treatment, and bed rest for
two months. After undergoing such treatments, the
claimant reported that his pain, along with motor
and sensory loss, had subsided.  While examining
the claimant, Dr. Kochno noted that the claimant's
lumbar flexibility was limited to 50 percent of
expected normalcy with tightness in the lumbar
paraspinals and lateral flexors.   Dr. Kochno
recommended physical therapy.   Dr. Kochno
completed a medical source statement as noted
above and, despite a limited treatment p[e]riod,
stated that the claimant has been limited to such
restrictions since June 2001 (Exhibits 5F, 12F, and
13F).  Even though Dr. Kochno noted that the
claimant had these restrictions dating back to June
2001, the record does not consistently support this
conclusion.  The claimant's alleged onset date is
not until April 2004.

The law judge also said (Tr. 35):

> The undersigned gives little weight to Dr. Taras Kochno's opinion. Dr. Kochno indicated extreme limitations dating back to June 2001 despite limited evaluation reports and treatment notes of his own supportive of such an opinion (Exhibits 5F, 12F, and 13F). Thus, the undersigned finds that Dr. Kochno's is less persuasive in determining the residual functional capacity for this case.

The plaintiff asserts that Dr. Kochno's assessment is supported by the doctor's May 28, 2009, examination findings (Doc. 14, p. 20). Among other things, the plaintiff notes that Dr. Kochno found that the plaintiff had limited lumbar flexibility and decreased Achilles reflex on the left (id.). Significantly, the plaintiff fails to mention that these records also indicate that "[g]eneral examination was unremarkable"; there was "no evidence of any muscle atrophy or fasciculations"; and "[n]eurologically reflexes [were] symmetrical and intact" (Tr. 303). Regardless, the findings do not support the degree of functional limitations opined by Dr. Kochno.

In all events, the law judge's decision to discount Dr. Kochno's opinion is reasonable and supported by substantial evidence. As indicated, Dr. Saad's February 2009 examination revealed "full flexion, extension,

lateral flexion bilaterally, and full rotary movement bilaterally" in the lumbar spine (Tr. 273). Dr. Saad also reported that "[t]he claimant says the back pain is improved with naproxen and Valium" (Tr. 271). Treatment notes from Coastal Orthopedics & Sports Medicine state that, in July 2009, the plaintiff was in no acute distress and "[m]anual muscle strength is 5/5 for all lower extremity muscle groups" (Tr. 338). Further, as the law judge discussed, "in October 2007, the claimant admitted to Dr. Thomas J. Paolino, a psychiatrist[,] that he had not been on any medications for his disc problems. In other words, the record indicated that the claimant did not take any prescribed medications nor any other types of treatment from January 2005 through October 2007" (Tr. 32). Finally, in December 2009, Dr. Gennady Gekht stated that the plaintiff refused to take prescription medication and did not want to proceed with treatments (Tr. 334).

The lack of medication or treatment for an extended period of time contradicts Dr. Kochno's opinion that the plaintiff's limitations extend back to June 22, 2001 (Tr. 298), as does the plaintiff's allegation of a disability onset date of April 4, 2004. These contradictions undercut the probativeness of Dr. Kochno's conclusory opinion.

C.  The plaintiff's final argument is that "[t]he hypothetical questioning relied upon by the ALJ cannot be deemed supported by substantial evidence" (Doc. 14, p. 21). This contention is also off-target.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).  On the other hand, the law judge is not required to include in the hypothetical question allegations that have been properly rejected. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).  In other words, the operative hypothetical question must contain the individual's vocational profile, including particularly his residual functional capacity, as determined by the law judge.

The law judge's finding of the plaintiff's residual capacity matches the operative hypothetical question asked of the vocational expert (compare Tr. 30-31 with Tr. 91-92). Therefore, the hypothetical question is not flawed.

Importantly, the plaintiff does not raise as a distinct issue a challenge to the law judge's residual functional capacity finding, which

would have been the appropriate challenge. The Scheduling Order and Memorandum Requirements directs the plaintiff to "identify with particularity the discrete grounds upon which the administrative decision is being challenged" (Doc. 10, p. 2). Consequently, since the plaintiff did not specifically articulate a challenge to the residual functional capacity finding, any such challenge is deemed forfeited.

Nevertheless, even if the plaintiff had challenged the residual functional capacity determination, that challenge would have failed.

The plaintiff argues that the operative hypothetical (and thus the residual functional capacity) failed to include the limitations set forth by Dr. Goldman and Dr. Kochno (Doc. 14, pp. 23, 24). As previously explained, however, the law judge properly discounted the opinions of Dr. Goldman and Dr. Kochno. Accordingly, limitations consistent with that evidence did not have to be included in the hypothetical question.

The plaintiff, dragging out the tired argument based on Winschel v. Commissioner of Social Security, 631 F.3d 1176, 1180-81 (11th Cir. 2011), further contends that the operative hypothetical question did not account for the law judge's finding that the plaintiff has a moderate limitation in

concentration, persistence or pace (Doc. 14, pp. 23-24). However, the law judge determined that that limitation was accommodated by restricting the plaintiff to "simple, unskilled, routine, and repetitive tasks with one to three steps instructions" (Tr. 31).

The plaintiff, citing to Winschel, suggests that a limitation to "simple, unskilled, routine, and repetitive tasks with one to three steps instructions" does not adequately account for a moderate limitation in concentration, persistence or pace (Doc. 14, pp. 23-24). However, Winschel does not state such a holding; rather, it merely states that a hypothetical question to a vocational expert must either explicitly, or implicitly, account for limitations in concentration, persistence or pace.  631 F.3d at 1181.

This reading of Winschel is confirmed by my examination of the district court record in that case. The error in Winschel was that, although the law judge found that the plaintiff had a moderate limitation in concentration, persistence or pace, the hypothetical question to the vocational expert contained no restriction regarding that limitation.  See Case No. 6:08-CV-1750-DAB (Doc. 14, p. 12).  Rather, the only limitation was to "a range of sedentary and or light work with a sit/stand option" (id.).  Thus, the Court of

Appeals had no occasion to determine whether a restriction to simple routine work was adequate if there was a moderate limitation in concentration, persistence or pace.   All the Court decided was that, if there was such a limitation, a hypothetical question that contained no mental restriction at all was inadequate.

Accordingly, Eleventh Circuit caselaw holds that a limitation to simple, routine tasks adequately addresses a plaintiff's moderate limitations in concentration, persistence or pace where the record shows that the plaintiff could perform such tasks.   See, e.g., Hurst v. Commissioner of Social Security, 522 Fed. Appx. 522 (11th Cir. 2013) (simple, routine repetitive tasks); Dawson v. Commissioner of Social Security, 528 Fed. Appx. 975 (11th Cir. 2013) (routine, repetitive tasks with up to three-step instructions); Smith v. Commissioner of Social Security, 486 Fed. Appx. 874 (11th Cir. 2012) (the performance of simple, routine and repetitive tasks adequately accounts for a moderate limitation in ability to maintain concentration, persistence, or pace); Scott v. Commissioner of Social Security, 495 Fed. Appx. 27 (11th Cir. 2012) (simple, routine tasks or unskilled work accounted for moderate limitations in concentration, persistence, or pace); Jarrett v. Commissioner of

Social Security, 422 Fed. Appx. 869, 872 (11th Cir. 2011) (the plaintiff could perform simple tasks). And there are a number of other Eleventh Circuit cases with the same ruling. Accordingly, the plaintiff's argument that his moderate deficit in concentration, persistence or pace cannot be accommodated by a limitation to "simple, unskilled, routine, and repetitive tasks with one to three steps instructions" is meritless.

IV.

For these reasons, the decision of the Commissioner is supported by substantial evidence and does not contain reversible error. I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: JUNE 5, 2014

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date

of its service shall bar an aggrieved party from attacking the factual findings

on appeal.  28 U.S.C. 636(b)(1).